IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN D. PETTINEO, | : | |
|     Plaintiff | : | |
| | : | CIVIL ACTION |
| v. | : | No. 05-4138 |
| | : | |
| HARLEYSVILLE NATIONAL BANK | : | |
| AND TRUST COMPANY, | : | |
|     Defendant | : | |

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.**                                                                                                       **January 31, 2006**

        Before the Court is the Motion for Reconsideration[1] filed by Plaintiff John D. Pettineo on November 1, 2005. Plaintiff's Motion asks the Court to reconsider its Order of October 24, 2005 (the "October 24th Order"),[2] wherein the Court granted Defendant Harleysville National Bank and Trust Company's Motion to Dismiss Pursuant to Rule 12(b)(6).[3] For the reasons that follow, the Court denies the Motion for Reconsideration.

**I.**     **Factual Background and Procedural History**

        On or about June 20, 2005, Plaintiff completed an electronic application for an unsecured Visa Platinum Credit Card offered by Defendant.[4] Defendant rejected Plaintiff's application by letter dated June 21, 2005 (the "notification letter").[5] The notification letter stated in

---

[1] Document #11.

[2] Document #10.

[3] Document #4.

[4] Compl. [Document #1] at 3.

[5] Id.

pertinent part: "We are regrettably unable to approve your request. Our principal reasons for this decision are indicated below."[6] The notification letter also explained the two reasons for Defendant's decision to deny Plaintiff's credit application: (1) "Delinquent past or present credit obligations with others" and (2) "Garnishment, attachment, foreclosure, repossession, collection action or judgement[.]"[7]

On August 3, 2005, Plaintiff filed his Complaint in this matter, alleging that the notification letter sent by Defendant violated the Equal Credit Opportunity Act ("ECOA") by including as its second reason for denial of his application reasons that did not apply to him.[8] Specifically, Plaintiff contended

> [t]hat five . . . of the seven . . . 'specific reasons' for denying [him] credit . . . were false. Plaintiff could not possibly have been denied credit by Defendant as a consequence of Plaintiff's credit report reflecting ANY 'garnishment,' 'attachment,' 'foreclosure,' 'repossession,' or 'judgment' as asserted by Defendant in their [sic] list of specific reasons for credit denial since Plaintiff at NO TIME ever had any of these derogatory items nor was it ever reported as such on Plaintiff's credit report.[9]

Defendant's Motion to Dismiss argued in response that the reasons provided in the notification letter satisfied the ECOA since the grounds for denial stated in the second reason were listed disjunctively, indicating that Plaintiff's application was denied for one or more of those grounds—not all of them.[10]

---

[6] Compl. [Document #1] Ex. A.

[7] Id.

[8] Compl. [Document #1] at 5.

[9] Id.

[10] Def.'s Mot. to Dismiss [Document #4] at 7.

**II.    Discussion**

Plaintiff's Motion for Reconsideration is filed pursuant to Local Rule 7.1(g) of Civil Procedure for the Eastern District of Pennsylvania. Rule 7.1(g) provides: "Motions for reconsideration . . . shall be served and filed within ten (10) days after the entry of judgment, order, or decree concerned."[11]  Filed eight days after the Court entered the October 24th Order, Plaintiff's Motion for Reconsideration was timely.

The law authorizes litigants to file motions for reconsideration to allow courts "to correct manifest errors of law or fact" and/or to afford litigants the opportunity "to present newly discovered evidence."[12]  Buttressed by these practical considerations, motions for reconsideration will be granted only where: (1) new evidence becomes available; (2) there has been an intervening change in the controlling law; or (3) a clear error of law or manifest injustice must be corrected.[13] Thus, "[i]t is improper on a motion for reconsideration to 'ask the Court to rethink what it had already thought through — rightly or wrongly.'"[14]

Plaintiff argues that the October 24th Order warrants reconsideration on every possible basis: (1) the availability of new evidence; (2) an intervening change in the controlling law; and (3) the need to correct an error of law and prevent manifest injustice.[15]  However, Plaintiff's

---

[11] Local Rule 7.1(g) (2004).  Local Rule 7.1(g)'s analog in the Federal Rules of Civil Procedure is Rule 59(e), which provides similarly: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of judgment."  Fed. R. Civ. P. 59(e).

[12] Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).

[13] NL Indus. Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 324 n.8 (3d Cir. 1995).

[14] Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

[15] Pl.'s Mot. for Recons. at 2.

motion generally leaves the Court to guess what the new evidence is, how the controlling law has changed, and what, if any, errors of law need to be corrected. Instead of outlining the grounds for reconsideration, the present motion rehashes old arguments, disagrees with the reasoning of the October 24th Order, and cites to provisions in the Code of Federal Regulations ("C.F.R.") that do not provide ample bases for the Court to repudiate its former ruling. Plaintiff fails to point to any previously unavailable evidence, fails to cite to any legal authority denoting a change in the controlling law, and fails to persuade the Court that October 24th Order contains an error of law that should be corrected or that manifest injustice will prevail absent reconsideration.

      A.      Justice Demands Reconsideration of the Court's Order of Dismissal

Plaintiff relies on United States v. Premises Known as 717 Woodward Street[16] to argue that "where the sole basis for the court's initial decision was the failure of a party to respond timely to an adversary's motion"[17] the interests of justice demand that a court grant a motion for reconsideration.

The 717 Woodward Street court granted claimants' counsel a fourteen-day extension to respond to the government's motion for summary judgment, denied a subsequent request made by claimants' counsel to extend the deadline further, and admonished counsel to file a timely response when it denied the request for the additional extension. Nonetheless, claimants' counsel failed to file a timely response to the motion. Due to their failure to file a timely response, the court granted the government's Motion for Summary Judgment. Ultimately, however, the court granted

---

[16] 804 F. Supp. 716 (E.D. Pa. 1992).

[17] Pl.'s Mot. to Recons. at 2.

claimants' motion for reconsideration in the interest of justice, but stated in its opinion that "a review of the merits of this matter convinces us that we should have let our [Order of dismissal] stand."[18]

Here, Defendant filed its Motion to Dismiss on August 24, 2005. On September 8, 2005, Plaintiff filed a Motion to Enlarge Time to Respond to Defendant's Motion to Dismiss,[19] which the Court granted by Order dated September 12, 2005 (the "September 12th Order").[20] The September 12th Order extended Plaintiff's time to respond to the Motion to Dismiss until September 30, 2005. Plaintiff filed his response to the Motion to Dismiss on October 14, 2005—a full two weeks late—without asking the Court for an additional extension of time.[21] By Order of October 24, 2005,[22] the Court granted the Motion to Dismiss, explaining in two footnotes the dual bases for the Court's ruling: (1) Plaintiff's failure to file a timely response to the motion to dismiss;[23] and (2) a substantive analysis of Plaintiff's claims. The Court explained:

> "The ECOA was enacted to protect consumers from discrimination by financial institutions." Midlantic Nat'l Bank v. Hansen, 48 F.3d 693, 699 (3d Cir. 1995). The ECOA's mandate of explanation on denied credit applications is "a necessary adjunct to the anti-discrimination purpose of the legislation, for only if creditors know that they must explain their decisions will they effectively be discouraged from discriminatory practices." Jochum v. Pico Credit Corp. of Westbank, Inc., 730 F.2d 1041, 1043 (5th Cir. 1984).

---

[18] Id. at 719.

[19] Document #5.

[20] Document #6.

[21] Document #7.

[22] Document #10.

[23] Id. n.1.

However, transparency is enough; the ECOA does not require financial institutions to provide denied applicants a statement of reasons "in the form of long, detailed, personal letters." O'Dowd v. South Central Bell, 729 F.2d 347, 352 (5th Cir. 1984).

Nonetheless, it appears that something akin to a long, detailed, and personal letter is what Plaintiff demands. Plaintiff argues that the second statement of reasons in his Notice violates the ECOA because that statement includes, among a reason that he admits, reasons that do not apply to him. Specifically, Plaintiff avers that he was never involved in a garnishment, attachment, foreclosure, repossession, or judgment. Comp. ¶ 18. However, the notice provisions of the ECOA and its implementing regulations do not require that the [notification letter] be narrowly tailored to fit the specific instance of a denied applicant. Rather, the requirement is one of general transparency. Moreover, the statement of reasons included in Defendant's form "Notice of Action Taken" mirrors Form C-1 of Appendix C to 12 C.F.R. Part 202 (2003) ("SAMPLE NOTICE OF ACTION TAKEN AND STATEMENT OF REASONS"). For these reasons, Defendant's Notice comports with the ECOA as a matter of law and Plaintiff's argument fails.[24]

Unlike the 717 Woodward Street court, this Court based its dismissal of Plaintiff's Complaint not only on procedural grounds of lack of timeliness but also on substantive grounds—in full consideration of Plaintiff's untimely response. Therefore, 717 Woodward Street, in which a failure to file a timely response to an adversarial motion was the court's sole basis for dismissing the case, is not analogous to the circumstance here.

---

[24] Id. n.2.

### 2. Failure to Consider Staff Interpretations of the C.F.R. Is an Error of Law

"Officials in the [Federal Reserve] Board's Division of Consumer and Community Affairs are authorized to issue official staff interpretations of" Section 202 of the C.F.R. ("Regulation B").[25] These staff interpretations are set forth in Appendix D of Regulation B. According to the introduction to Appendix D, "[a]ll previous [Federal Reserve] Board and staff interpretations, official and unofficial, are superseded by this commentary."[26] The October 24th Order did not expressly discuss the staff interpretations of Regulation B. Therefore, Plaintiff argues that the Court made a clear error of law warranting reconsideration and repudiation of the October 24th Order.[27]

Apparently, Plaintiff assumes that because the Court did not expressly discuss the staff interpretations of Regulation B in the October 24th Order, the Court did not consider the staff interpretations when assessing the merits of Plaintiff's claims. Plaintiff's assumption is misplaced. The Court considered what, if any, guidance the staff interpretations of Regulation B provided concerning the merits of Plaintiff's case. However, the Court found that the relevant staff interpretations offered little guidance since they merely reiterate and/or explicate the plain language

---

[25] 12 C.F.R. app. § 202 (2005).

[26] 12 C.F.R.§ 202 (Supp. I 2005). Likewise, the introductions to the staff interpretations from 2003 and 2004 state that the commentaries therein supersede all previous commentaries.

[27] Plaintiff seems to argue that the October 24th Order's lack of discussion of the staff interpretations provides dual grounds for reconsideration: an error of law was made and the provision of newly available evidence. Concerning the latter, Plaintiff contends that he has provided the Court "new information that was not considered in the Court's initial decision." Pl.'s Mot. to Recons. at 4. Taken at his word, Plaintiff's contention that the staff interpretations are new information that the Court must consider is not a permissible ground to grant a motion for reconsideration. Plaintiff may be arguing that the staff interpretations are newly available evidence, but the staff interpretations are neither newly available nor evidentiary. Rather, as discussed, the Court considered the staff interpretations when ruling on the Motion to Dismiss. As such, Plaintiff cannot be said to have pointed to anything "new." Moreover, the staff interpretations are explanations and characterizations of law; they are not evidence.

of the relevant regulations. Thus, the Court limited its discussion in the October 24th Order to the plain language of the relevant regulation itself.

Additionally, Plaintiff's Motion for Reconsideration reasserts many of the arguments that Plaintiff made in his untimely response to the Motion to Dismiss, except that this time around he couches his arguments in the staff interpretations of Regulation B rather than in the text of Regulation B itself. This tactic is improper since motions for reconsideration are not intended to afford litigants a chance to rehash old claims. Rather, motions for reconsideration, as previously stated, afford litigants the opportunity to point out and courts to correct manifest errors of law or fact.

3. Consideration of Predecessor Notice Forms Is an Error Law

Appendix C to Regulation B provides several "sample notification forms."[28] Appendix C explains that "[t]he forms are illustrative and may not be appropriate for all creditors."[29] Moreover, Appendix C explains that "[a] creditor may design its own notification forms or use all or a portion of the forms contained in this appendix."[30]

Despite this language, Plaintiff argues that the Court erred in dismissing his case where the notification form that he received was derived from the most current version of Appendix C but based on a 2003 sample notice.[31] Plaintiff's argument is that subsequent sample notification

---

[28] 12 C.F.R. app. C § 202 (2005). Appendix C to Regulation B published in 2004 and 2005 contains ten sample notification forms, and appendix C to Regulation B published in 2003 contains nine sample notification forms.

[29] 12 C.F.R. app. C § 202.

[30] Id.

[31] Pl.'s Mot. to Recons. at 6.

8

forms supersede "all previous versions."[32] Plaintiff's argument, however, conflates the dictates of the introduction to Appendix D with the language of Appendix C. Appendix D specifically states that each iteration of the staff interpretations of Regulation B supersedes the previous versions. Appendix C states that the model forms of notification are non-mandatory examples that creditors may employ if helpful; there is no notice in Appendix C stating that the forms contained therein supersede previous forms. In fact, Plaintiff's argument defies logic since a sample form cannot be both illustrative and non-mandatory and at the same time supersede all previous versions.

**III.   Conclusion**

> For the foregoing reasons, the Court denies Plaintiff's Motion for Reconsideration. An appropriate Order follows.

---

[32] Id.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN D. PETTINEO,** : | |
|     **Plaintiff** : | |
| : | **CIVIL ACTION** |
| v. : | No. 05-4138 |
| : | |
| **HARLEYSVILLE NATIONAL BANK** : | |
| **AND TRUST COMPANY,** : | |
|     **Defendant** : | |

## ORDER

    **AND NOW,** this thirty-first day of January 2006, upon consideration of Plaintiff's Motion for Reconsideration [Document #11] and Defendant's Response thereto [Document #12], it is hereby **ORDERED** that Plaintiff's motion is **DENIED**.

    This case is to remain **CLOSED**.

    It is so **ORDERED**.

                                                      **BY THE COURT:**

                                                      /s/ Cynthia M. Rufe

                                                      **CYNTHIA M. RUFE, J.**